IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01171–KMT

WILLIS BERRY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER

This case comes before the court on review of the Commissioner's denial of Plaintiff-Claimant Willis Berry's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

### FACTUAL AND PROCEEDURAL BACKGROUND

Claimant applied for DIB and SSI in June 2011, alleging that he had been disabled by diabetes, depression, back problems, and knee problems since September 2007. (*See* Doc. No. 10, Social Security Administrative Record ["AR"] at 320, 327, 377.) The Commissioner denied both applications. (*Id.* at 210, 213.) Following the denials, Claimant requested and received a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at 144–179, 217.) At that hearing, the claimant added shoulder and hand problems to the list of disabling conditions. (*See id.* at 161–62.) After the hearing, the ALJ determined that Claimant was not disabled within the meaning of

section 1614(a)(3)(A) of the Act, because Claimant was capable of performing substantial gainful work in the national economy. (*See id.* at 135–36.) The Appeals Council subsequently denied Claimant's request for review (*id.* at 1), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). Claimant timely sought review by the Court.

## STATUTORY AND REGULATORY BACKGROUND

Titles II and XVI of the Act award Social Security benefits to claimants who meet certain eligibility requirements. 42 U.S.C. §§ 423, 1382. To receive either DIB or SSI, a claimant must be disabled. 42 U.S.C. §§ 1382(a), 423(a). The Social Security Commissioner has established a five-step sequential process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who works is not disabled, regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5. If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). After that, the burden shifts to

the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of performing substantial gainful work in the national economy. *Id.* If at any point the Commissioner conclusively finds that the claimant is or is not disabled during the five-step review process, the analysis ends. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by this court is limited to determining whether the ALJ applied the correct legal standard, whether the decision is supported by substantial evidence, and whether the decision comports with the relevant regulations and caselaw. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284 (11th Cir. 1983)).

## ANALYSIS

Claimant alleges the Commissioner erred in three ways. First, Claimant argues that the ALJ failed to adequately consider the allegedly disabling pain in the claimant's knee, back, and hand. (*See* Doc. No. 13 [Opening Br.] at 20–22, filed Jan. 5, 2014.) Second, Claimant contends that the Residual Functional Capacity ("RFC") the ALJ assigned the claimant failed to account

for the claimant's allegedly severe knee and hand pain. (*See id.* at 17–20.) Third, Claimant faults ALJ for finding the claimant could perform jobs in the national economy that were, according to the claimant, inconsistent with the claimant's limitations. (*See id.* at 7–8.)

### 1. The ALJ's Consideration of Claimant's Allegedly Disabling Knee, Back, and Hand Pain

The claimant asserts that there is sufficient objective and subjective evidence to support the claimant's allegations of disabling pain, and that the ALJ did not properly consider or address this evidence. (*See id.* at 20–22.) The claimant also argues that the ALJ did not make proper *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987) findings.[1] (*See id.*)

The ALJ is entrusted with the difficult task of resolving evidentiary conflicts, weighing medical source opinions, and, ultimately, determining whether claimants are disabled within the meaning of the Act. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Before completing step four of the disability review process, the ALJ must assess the claimant's RFC, which is the most the claimant can do in a work setting on a regular and continuing basis despite the limitations imposed by his or her impairments. SSR 96-8p, 1996 WL 374184 at *1, 3.[2] When assessing the claimant's RFC, the ALJ must consider all the relevant evidence and all of the claimant's medically determinable impairments. *Id.* at *2. Then, in the ALJ's written decision, the ALJ must explain how the evidence supports each of his or her conclusions. *Id.* at *7.

---

[1] *Luna* requires ALJs to engage in a two to three-step analysis (depending on how the analysis is parsed) of the objective and subjective evidence of a claimant's symptoms. *See* discussion *infra* pg. 5.
[2] An "SSR" is a Social Security Administration ruling. These rulings, which are final opinions and orders published under the authority of the Commissioner of Social Security, are binding on "all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

When a claimant alleges disability due to subjective symptoms like pain, the ALJ must conduct a three stage analysis. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163). First, the ALJ must determine whether the claimant has shown the existence of a pain-producing impairment by objective medical evidence. *Id.* Second, the ALJ must decide whether that impairment could reasonably be expected to produce the claimant's alleged pain. *Id.* At this stage of the analysis, the ALJ must accept as true the claimant's subjective allegations of pain, whether the ALJ believes the claimant or not. *See Luna*, 834 F.2d at 163. If the ALJ determines that a medically determinable impairment could reasonably have caused the claimant's alleged pain, then the ALJ will, third, consider the both objective and subjective evidence, including the claimant's testimony. *See Keyes-Zachary*, 695 F.3d at 1166. During this third stage of the analysis, the ALJ must decide whether he or she believes the claimant's testimony. *See id.*

Credibility determinations are reserved to the ALJ, and the Court will not upset those determinations when they are supported by substantial evidence. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). The ALJ must cite specific reasons for doubting the claimant's credibility, especially when subjective pain testimony is crucial. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Pain is an example of a symptom that can "suggest a greater severity of impairment than can be shown by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1. Accordingly, a claimant's statements about the intensity and persistence of subjective symptoms like pain may not be disregarded solely because they are not substantiated by objective medical evidence. *Id.* at *2. When evaluating the credibility of a claimant's pain testimony, the ALJ must consider a multitude of factors, including the

extensiveness of the claimant's attempts to obtain relief, the frequency of the claimant's medical contacts, the nature of the claimant's daily activities, subjective measures of credibility within the ALJ's judgment, and the consistency or compatibility of the claimant's testimony with objective medical evidence. *Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004). The ALJ need not, however, make a "formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (citation omitted). Ultimately, "common sense, not technical perfection," is the Court's guide. *Id.*

Here, the ALJ summarized the three-stage pain analysis, but did not make any stage two findings as to whether the claimant's medically determinable impairments could reasonably have been expected to produce the claimant's pain. (*See* AR at 130, 130–35.) The ALJ did, however, assess the credibility of the claimant's allegations of disabling knee, back, or hand pain. (*See id.*) As part of that assessment, the ALJ discussed the objective and subjective evidence of the claimant's pain. As to the objective evidence, he scrutinized the claimant's medical records, comparing the claimant's alleged limitations resulting from his back, knee, and hand u to the examination and test results in those records, and pointing out what the ALJ perceived as numerous inconsistencies between the claimant's alleged limitations and those limitations suggested by the objective medical evidence. (*See id.*) As to the subjective evidence, the ALJ offered several reasons why he doubted the claimant's testimony about the intensity and persistence of the pain. The ALJ doubted the claimant's credibility, in part, because the claimant had failed to comply with treatment and had failed to take medications, despite testifying to the ALJ that he regularly took his medications and despite continuing to use cocaine on a regular basis. (*See id.* at 131–32.) The claimant's daily activities, including moving a friend and playing

basketball, also concerned the ALJ, who believed those activities indicated "significantly greater capacities . . . than what the claimant described in his hearing testimony . . . ." (*See id.* at 131, 133.) The fact that the claimant stopped working two years before the alleged disability began, and worked only sporadically his entire life, also played into the ALJ's consideration of the credibility of claimant's testimony. (*See id.* at 132 [calling the claimant's work history "weak"].)

Though the ALJ did not make any findings that the claimant's medically determinable medical conditions could reasonably have been expected to produce the claimant's pain, the ALJ's extensive discussion of why he did not believe the claimant's subjective testimony about the intensity, persistence, and limiting effects of his pain shows that the ALJ did, even if implicitly, find in favor of the claimant at stage two of that analysis. (*See id.* at 130–35.) Furthermore, when evaluating the credibility of the claimant's testimony, the ALJ expressly considered at least four factors the claimant alleges the ALJ did not properly consider. The ALJ's concern about the inconsistency between the claimant's daily activities and the claimant's allegations about the intensity, persistence, and limiting effects of his pain shows that the ALJ considered the nature of the claimant's daily activities. The ALJ's comparison of the objective medical evidence with the claimant's testimony about his pain demonstrates that the ALJ considered the consistency or compatibility of the claimant's testimony with objective medical evidence. The ALJ's comments on the claimant's failure to comply with treatment indicate that the ALJ considered the extensiveness of the claimant's attempts to obtain relief. And the ALJ's comments about the claimant's "weak" work history evinces the ALJ's consideration of subjective measures of credibility within the ALJ's judgment. Though the ALJ did not explicitly

mention the frequency of the claimant's medical contacts, his extensive documentation of the claimant's medical contacts demonstrates that he considered it.  (*See id.*)

The court therefore rejects the claimant's first assignment of error.

### 2. The ALJ's Accounting of the Claimant's Allegedly Severe Knee and Hand Pain in the Claimant's RFC

Claimant faults the ALJ's RFC assessment for not containing any "manipulative restrictions," argues that the assessment's restrictions are insufficient to account for the claimant's knee pain, and contends the ALJ mischaracterized and omitted evidence tending to support more severe RFC limitations related to the claimant's knee and hand pain.  (*See* Opening Br. at 17–20.)  As a result of these errors, the claimant argues the ALJ's RFC assessment is not supported by substantial evidence.  (*See id.* at 19–20.)

Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  A finding is supported by substantial evidence if it is supported by "more than a scintilla, but less than a preponderance" of evidence.  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988) (quoting *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987)).  Evidence is insubstantial when it is "overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The Court may not "reweigh the evidence" or "substitute its judgment" for that of the Commissioner."  *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987).  So long as there is substantial evidence to support the ALJ's decision, the decision must stand, even if the Court would have reached a different result.  *See Ellison*, 929 F.2d at 536.  The ALJ cannot "pick and choose what aspects of an contradicted medical opinion to believe, relying on only those parts favorable to a finding of disability," *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004),

but the ALJ need not discuss every bit of evidence either, *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009).

> In this case, the ALJ found that the claimant had the RFC to:
>
> perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: the claimant can maintain the concentration, persistence and pace to carry out, understand and remember simple and routine instructions; he should have no public interaction and can occasionally interact with supervisors and co-workers; the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally; the claimant can sit and stand and/or walk for 6 hours a day; the claimant can occasionally stoop, kneel and crouch; and he should no more than occasionally reach overhead with his non-dominant left arm.

(AR at 130.) In the ALJ's review of records, the ALJ found that in October 2011, claimant had a "full range of motion in both knees with no effusion or swelling." (*Id.* at 133.) The ALJ noted that the claimant's "right knee was intact to cruciate and collateral stress testing," and that "X-rays showed tricompartmental arthritis in the left knee that was moderate to severe." (*Id.*) Continuing, the ALJ observed that those X-rays of the right knee "showed at least some subluxation in the lateral compartment . . . with some decreased joint space laterally." (*Id.*) As for the claimant's fingers, the ALJ observed that the X-rays of the claimant's hands "showed no more than 'minimal' or 'mild' findings." (*Id.* [quoting the medical report].) The ALJ also noted that in January 2012, a "straight leg raise was negative and while the SI joint appeared to be a little scierotic he was not complaining of any pain in that area." (*Id.*) The ALJ reported this examiner's diagnosis confirmed mild to moderate tricompartmental osteoarthritis in the right knee. (*Id.*) The ALJ summarized the claimant's August 2012 examination as similar to these previous findings, showing no significant abnormalities of the claimant's knees and a "full range of motion, no tenderness, and normal coordination." (*Id.* at 134.) The ALJ concluded that the medical consultative examination was also consistent with these other findings; the examiner

found "no local tender points over either knee" and "normal range of motion of the [claimant's] wrists, elbows and fingers." (*Id.*)

The claimant argues that the ALJ's recitation of evidence mischaracterizes and omits evidence tending to support greater restrictions in the RFC. First, the claimant takes issue with the ALJ's statement that the October 2011 tests resulted in "minimal findings." (*See* Opening Br. at 18.) Second, the claimant accuses the ALJ of "glossing over" the January 2012 diagnosis of mild to moderate tricompartmental arthritis. (*See id.* at 18–19.) Third, the claimant faults the ALJ for omitting from his recitation of the October 2011 findings "mild scattered degenerative changes throughout the hand and wrist" and "postsurgical changes within the middle phalanx long finger left hand from prior fixation." (*Id.* at 19.) Fourth, the claimant argues the ALJ failed to discuss the medical consultative examiner's observation of "abnormalities" in the claimant's hands, and that the claimant was "uncomfortable" when his knees were examined. (*Id.*)

Upon review, the court disagrees that the ALJ mischaracterized the evidence. The ALJ's "minimal findings" characterization is not inconsistent with the evidence, and the claimant does not contest the accuracy of the ALJ's recitation of the evidence underlying this characterization. (*See id.* at 17–20.) Also, the ALJ did not "gloss over" the January 2012 diagnosis of mild-to-moderate tricompartmental arthritis. The ALJ plainly acknowledged it. (*See* AR at 133.) The claimant is correct that the ALJ omitted discussion of the claimant's mild scattered degenerative changes in the hand and wrist (*see id.* at 130–35), but that evidence does not, by itself, contradict the ALJ's findings or RFC assessment. The same is true of the ALJ's omission of the medical consultative examiner's findings of "abnormalities" in the claimant's hands and the report that the claimant was "uncomfortable" when his knees were examined.

More importantly, even if ALJ did mischaracterize or omit some probative evidence from his discussion, the court's inquiry on review is whether there is substantial evidence for the conclusion the ALJ made, not the conclusions that he *could have* made.  *See Jozefowicz*, 811 F.2d at 1357.  The court is not empowered to reweigh the evidence or substitute its judgment for that of the ALJ.  *Id.*  The real question then is whether the RFC the ALJ assigned the claimant is supported by substantial evidence.

The court agrees with the defendant that the RFC's light work, standing, stooping, kneeling, and crouching limitations accounted for the claimant's knee and hand problems.  (*See* Doc. No. 16 [Resp. Br.] at 13, filed Feb. 2015.)  The Commissioner defines "light work" as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  According to the Commissioner, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*  Restrictions on lifting, carrying, kneeling, stooping, crouching, and pushing and pulling sufficiently account for knee and hand pain of the level suggested by the ALJ's appropriately weighted findings.  The court also agrees with the defendant that the evidence, as appropriately weighted by the ALJ, does not suggest more significant restrictions or limitations resulting from the claimant's hand pain.  (*See* Resp. Br. at 13.)

The court therefore rejects the claimant's second assignment of error.

### 3. The Consistency Between the Claimant's Limitations and the Jobs The ALJ Concluded the Claimant Could Perform in the National Economy

Claimant also faults the ALJ for finding the claimant could perform jobs in the national economy that were, according to the claimant, inconsistent with the claimant's limitations. (*See* Opening Br. at 22–23.) The claimant argues that the ALJ failed to ask the vocational expert about an alleged conflict between the Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony. (*See id.*)

In certain cases, the ALJ may consult a vocational expert to meet the Commissioner's step five burden to prove that the claimant is capable of performing jobs in the national economy despite the limitations imposed by the claimant's impairments. *See Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005); SSR 00-4P, 2000 WL 1898704, at *1–2. But before the ALJ may rely upon the vocational expert's opinion about what jobs are available to a person with the claimant's limitations, the ALJ must ask the expert whether the demands and descriptions of those jobs conflict with the demands and descriptions for those jobs found in the DOT, and elicit a reasonable explanation for any discrepancy. *Hackett*, 395 F.3d at 1174; SSR 00-4P, 2000 WL 1898704, at *1–2.

Here, the claimant does not allege a conflict between the *vocational expert's testimony* and the *DOT*. (*See* Opening Br. at 21–22.) Rather, the claimant alleges conflicts between the *evidence* and the *DOT descriptions* of the jobs listed by the vocational expert. (*See id.* [arguing that the claimant is incapable of performing the jobs listed by the vocational expert, as defined by the DOT].) The claimant does not challenge the vocational expert's qualifications or the hypothetical question posed to the expert by the ALJ. (*See id.*) The claimant's real argument then is that the ALJ's RFC is unsupported by substantial evidence—a charge this court has

already addressed and rejected.  *See supra* Section 2.  The court need not re-examine an issue that it has already decided.  The claimant's third assignment of error is therefore without merit.

## CONCLUSION

Having considered and rejected each of the claimant's arguments, it is therefore

**ORDERED** that the Commissioner's decision through the Administrative Law Judge is **AFFIRMED.**

Dated this 16th Day of September, 2015.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge